Harrison COMBS, et al., as Trustees of the United Mine Workers Health and Retirement Funds, Plaintiffs,

v.

MABEN ENERGY CORPORATION, Defendant and Third-Party Plaintiff,

v.

SLAB FORK COAL COMPANY, Third-Party Defendant.

Harrison COMBS, et al., as Trustees of the United Mine Workers Health and Retirement Funds, Plaintiffs,

v.

HALF-WAY, INC., Defendant and Third-Party Plaintiff,

v.

SLAB FORK COAL COMPANY, Third-Party Defendant.

Harrison COMBS, et al., as Trustees of the United Mine Workers Health and Retirement Funds, Plaintiffs,

v.

OLD MILL MINING, INC., Defendant and Third-Party Plaintiff,

v.

SLAB FORK COAL COMPANY, Third-Party Defendant.

Harrison COMBS, et al., as Trustees of the United Mine Workers Health and Retirement Funds, Plaintiffs,

v.

EAST GULF FUEL CORPORATION, Defendant and Third-Party Plaintiff,

v.

SLAB FORK COAL COMPANY, Third-Party Defendant.

Civ. A. Nos. 83–5098, 83–5112, 83–5134 and 83–5140.

United States District Court, S.D. West Virginia, Beckley Division.

June 19, 1986.

Gary A. Collias, McIntyre, Haviland & Jordan, Charleston, W.Va., for plaintiffs.

John F. Rist, III, Beckley, W.Va., for Maben Energy, Half-Way, Inc. and East Gulf.

Richard E. Rowe, Goodwin & Goodwin, Charleston, W.Va., for Slab Fork.

Pat C. Fragile, Wooton, Wooton & Fragile, Beckley, W.Va., for Old Mill.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

These cases come before this Court on cross motions for summary judgment in order to determine the meaning of a provision of the National Bituminous Coal Wage Agreement of 1981. The facts applicable to each of the cases are as follows.

Plaintiffs, Harrison Combs, John J. O'Connell and Paul R. Dean are Trustees of the United Mine Workers of America 1950 Pension Trust, 1950 Benefit Trust, 1974 Pension Trust and 1974 Benefit Trust, which are referred to as the United Mine Workers of America Health and Retirement Funds. The Trustees conduct business of the trusts at 2021 K Street, N.W., Washington, DC.

The Defendants, Maben Energy Corporation, Half-Way, Inc., East Gulf Fuel Corporation and Old Mill Mining, Inc., are and were engaged in the business of operating certain contract coal mines. Maben Energy Corporation operated in and about Maben, Wyoming County, West Virginia, with an office address at 41 Eagles Road, Beckley, West Virginia. Half-Way, Inc. operates in and about Alpoca, Wyoming County, West Virginia, with an office and address at 604 Maxwell Hill Road, Beckley, West Virginia. East Gulf Fuel Corporation operates in and about Gulf, Raleigh County, West Virginia, with an office and address at 41 Eagles Road, Beckley, West Virginia. Also Old Mill Mining is and was engaged in the business of operating contract coal mines in and about Maben, Wyoming County, West Virginia, with an office and address at 218 Grist Mill Drive, Beckley, West Virginia.

Jurisdiction is conferred on the Court by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and also by Sections 502–515 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132–1145, as amended by the Multi-Employer Pension Plan Amendments Act of 1980, in that Plaintiffs are aggrieved by the Defendants' alleged violations of the collective bargaining agreement and trusts of the United Mine Workers of America Health and Retirement Funds, which they further allege violate the provisions of ERISA as amended.

The Funds are employee benefit plans within the meaning of ERISA, 29 U.S.C. § 1001, *et seq.* The Funds bring these

actions on behalf of its trustees, participants and beneficiaries.

On or about June 7, 1981, the Defendant Maben and the United Mine Workers of America entered into the National Bituminous Coal Wage Agreement of 1981. The UMWA and the Defendant Half-Way entered into an identical agreement on November 16, 1981. The UMWA and Defendant East Gulf likewise entered into an identical agreement on June 14, 1982. On or about October 22, 1981, the Defendant Old Mill and the United Mine Workers of America entered into the National Bituminous Coal Wage Agreement of 1981. Under the terms of the wage agreement, at Article XX(d), the "signatory employers engaged in the production of coal" are required to pay into the Funds certain amounts on tons of coal "produced by such employer for use or for sale", and for each hour worked by their classified employees. Signatory employers agreed to make payments by the tenth day of each month covering the amounts due for the preceding month's operation and to furnish monthly statements showing on a mine-by-mine basis the full amounts due for the tons of coal produced, procured, or acquired for use or for sale and for the hours worked with respect to which the amounts are payable. The Plaintiffs allege that the Defendants have not made payments as required by the wage agreement. The failure to make payments would cause the Funds to suffer loss of investment income and to incur administrative costs.

The Defendants allege that they were merely contract miners who provided the service of mining coal and as such did not produce coal for sale or for use as defined in the wage agreement. Also, the Defendants contend that the producer of the coal was Slab Fork Coal Company. Further, the Defendants contend that the Plaintiff has assessed and collected production of royalty from the owner or producer of the coal and assessed and collected the hourly royalty from the contractor or provider of services. It is agreed that all hourly royalties were paid as required.

With respect to the Maben case, on October 3, 1977, and at various times thereafter, Maben entered into mining contracts with Westmoreland Coal Company which mining contracts were assigned to and accepted by Slab Fork Coal Company, the Third-Party Defendant herein, on or about April 2, 1982. The Defendant Maben Energy Corporation asserts that the contract did provide that Maben was to provide services, labor and equipment to mine the mineral which was owned by Slab Fork Coal Company. The assignment to and acceptance by Slab Fork did not involve any alteration of the October 3, 1977, agreement which remained in effect at all times pertinent herein. Pertinent to that agreement, Maben operated the Maben No. One Coal Mine referred to in the October 3, 1977, agreement and severed coal. Maben employed the workers represented for collective bargaining purposes by the UMWA whose coal mining work was performed pursuant to the wage agreement. Maben supervised the classified employees and provided its own management. Pursuant to the terms of that agreement, once the coal was mined, it was delivered to Slab Fork. During the period December, 1982, through July, 1983, Maben mined for Slab Fork a net of 49,803.04 tons of coal, as indicated by an audit performed by the staff of the Plaintiff Trustees. The parties agree to the hourly and tonnage figures arrived at in the audit. The parties disagree as to the characterization by the audit of the tonnage figures as constituting "produced for use or sale" tonnage under the terms of the wage agreement.

The audit indicates an offset of $4,182.98 by virtue of overpaid hourly royalties which Maben has made. The Plaintiffs agree that Maben is entitled to a credit against any amount the Court may find owing as tonnage royalty, but the Plaintiffs contend that $231.85 of that cannot be refunded due to the provisions of 29 U.S.C. § 1103(c)(2)(A) and the date of amendment of that provision. The Defendants object to this contention.

As to Half-Way, that company entered into mining contracts with Westmoreland Coal Company on August 17, 1981. That mining contract was assigned to and accepted by Slab Fork Coal Company, the Third-Party Defendant herein, on or about April 9, 1982. The Defendant asserts that the contract did provide that it was to provide services, labor and equipment to mine the mineral which was owned by Westmoreland. Pursuant to that agreement, Half-Way operated a coal mine and separated coal. Half-Way employed workers represented for collective bargaining purposes by the UMWA whose coal mining work was performed pursuant to the wage agreement. Half-Way supervised the classified employees and provided its own management. Pursuant to the terms of the mining contract with Westmoreland, now Slab Fork, once the coal was mined it was delivered to Slab Fork. During the period of June 7, 1981, through July, 1983, Half-Way mined for Slab Fork pursuant to its mining contract, and a net of 28,314.42 tons of coal was mined and UMWA represented employees worked a total of 43,443.-50 hours.

The above figures are based on an audit performed by the staff of the Plaintiff Trustees, and the parties agree that the hourly and tonnage figures arrived at in that audit are accurate, and again the parties disagree as to the audit's characterization of these figures as constituting production for use or for sale.

With respect to East Gulf, that company entered into a contract for the mining of coal with Slab Fork Coal Company on June 10, 1982. The Defendant asserts that the contract did provide that it was to provide services and labor and equipment to mine the mineral which was owned by Slab Fork. Pursuant to that arrangement, East Gulf operated a coal mine and severed coal. The East Gulf employed workers represented for collective bargaining purposes by the UMWA whose coal mining work was performed pursuant to the wage agreement. East Gulf supervised the classified employees and provided its own management. Pursuant to the terms of the mining contract, once the coal was mined it was delivered to Slab Fork.

During the period of June 14, 1981, through July, 1983, East Gulf mined for Slab Fork, a net of 130,483.37 tons of coal, and its UMWA represented employees worked a total of 51,570 hours. These figures are based on an audit performed by the staff of the Plaintiff Trustees, and the parties agree as to the accuracy of those figures, however, the parties disagree as to the characterization which the audit gives those figures.

On September 1, 1981, and at various times thereafter, Defendant Old Mill entered into mining contracts with Slab Fork, the Third-Party Defendant herein. The Defendant asserts that the contract did provide that Old Mill was to provide services, labor and equipment to mine the mineral which was owned by Slab Fork Coal Company. Pursuant to that agreement, Old Mill managed an auger mining operation in severed coal. Old Mill employed workers represented for collective bargaining purposes by the UMWA whose coal mining work was performed pursuant to the wage agreement. Old Mill supervised the classified employees and provided its own management. Pursuant to the terms of the mining contract with Slab Fork, once the coal was mined it was delivered to Slab Fork. During the period of October 22, 1981, through July 11, 1983, Old Mill mined for Slab Fork a net of 7,915.21 tons of coal. These figures are based on an audit performed by the staff of the Plaintiff Trustees, and the parties agree that the tonnage figures arrived at in that audit are accurate. The parties disagree, however, to the characterization given to those tonnage figures by the audit.

Each of the Defendants pursue third-party claims against Slab Fork Coal Company for its failure to pay the tonnage royalties under the mining contracts. If forced to pay tonnage royalties, the Defendants contend they are entitled to indemnity from Slab Fork.

The principal issue raised is whether Article XX(d) which provides, *inter alia,* that a royalty will be paid "per ton on each ton of two thousand (2,000) pounds of bituminous coal produced by such employer for use and for sale." The Defendants contend that the signatory employer producing for use or sale was Slab Fork, and that Plaintiffs contend that the employers producing for use or for sale were Maben Energy Corporation, Half-Way, Inc., East Gulf Fuel Corporation and Old Mill Mining.

The Court will examine the use of this language in the National Bituminous Coal Wage Agreement of 1981, to determine which of the contentions is true.

The Court notes initially that the Defendants offer cases and statutory citations which indicate the use of the word "produce" in tax regulations and statutes passed by Congress. In *U.S. v. Brook Contracting Corporation,* 759 F.2d 320, 327 (3d Cir.1985), the Third Circuit Court of Appeals directs district courts not to compare language in statutes with language found in collective bargaining agreements. Accordingly, the Court will consider interpretations of "produce for use or for sale" as those terms relate to collective bargaining agreements in general and this collective bargaining agreement in particular.

 In determining what meaning should be given to words in a collective bargaining agreement, the Court may examine the use of the terms in prior collective bargaining agreements and the interpretation of those terms by the courts. Continued use of the same terms after judicial construction implies the acceptance of the courts' interpretation. *Carbon Fuel Co. v. UMWA,* 444 U.S. 212, 222, 100 S.Ct. 410, 416, 62 L.Ed.2d 394 (1979).

 "Produced" has been determined to mean, in the collective bargaining context, having acquired something of ascertainable value. *Haynes v. Eagle-Picher Co.,* 295 F.2d 761, 765 and n. 2 (10th Cir.1961). Coal is produced for use or sale when it is first made marketable or usable as fuel. *Thomas v. Blue Coal Corporation,* 355 F.Supp.

510, 512 (M.D.Pa.1973). When courts have considered when coal is produced for use or for sale, the low quality of the coal when it is extracted has been held to have no bearing on whether it has been produced for use or for sale. *Combs v. Hawk Contracting, Inc.,* 543 F.Supp. 825, 828 (W.D.Pa. 1982); *Huge v. Ondesko,* 415 F.Supp. 816, 820 (W.D.Pa.1976); *Thomas v. Blue Coal Corporation,* 355 F.Supp. at 512; *Lewis v. Kerns,* 175 F.Supp. 115, 118 (S.D.Ind.1959).

"For use or for sale" has been interpreted to mean ultimate sale, even though the coal is not in a saleable condition upon the point of extraction from the ground. *Hawk Contracting,* 543 F.Supp. at 828. In *Huge v. Ondesko,* the court held:

> "We believe the [collective bargaining] agreement contemplates payment of royalties on all coal eventually sold for fuel, whether clean upon excavation or recoverable from processing."

*Huge v. Ondesko,* 415 F.Supp. at 820.

In line with this reasoning, each subsequent improvement on the quality of the coal does not constitute a new production. *Blue Coal Corp.,* 355 F.Supp. at 512.

 Therefore, it is the interpretation of this Court that where Article XX(d) refers to production for use or for sale the extraction of coal from the ground for a commercial purpose was intended. The contract miners, Old Mill, Maben, Half-Way and East Gulf, when they extracted coal from the ground for its economic value and for eventual sale, produced coal for use or for sale as alleged in the complaint and as contended by the Plaintiffs in the agreed statement of facts. The mere acceptance of royalty payments by the Plaintiffs from Slab Fork Coal Company does not constitute a waiver of its right to collect the sums from those responsible under the terms of the National Bituminous Coal Wage Agreement of 1981. *Lewis v. Brock,* 308 F.2d 759 (6th Cir.1962); *Hawk Contracting,* 543 F.Supp. at 829; *Huge v. Old Home Manor, Inc.,* 419 F.Supp. 1019 (W.D. Pa.1976).

The audit figures show that Maben owed a principal sum of $74,540.16.* The audits also show that Half-Way owed a principal sum of $14,749.43; Old Mill owed a principal sum of $12,585.18; and East Gulf owed a principal sum of $63,649.31.

29 U.S.C. § 1132(g) provides that interest is to be assessed on unpaid, due benefits. Where, as here, no interest rate is specified in the plan, the interest is determined by reference to 26 U.S.C. § 6621. By reference to that statute, the regulations issued thereunder as contained in 26 C.F.R. § 301.6621–1 and revenue rulings issued thereunder, the Court determines that the appropriate interest rates are as follows:

1. For the period from July 1, 1983, to December 31, 1984, the interest rate of 11% per annum;

2. For the period beginning January 1, 1985, to June 30, 1985, the interest rate of 13% per annum;

3. For the period from July 1, 1985, to December 31, 1985, the interest rate of 11% per annum; and

4. For the period of January 1, 1986, to June 30, 1986, the interest rate of 10% per annum.

For each of the Defendants, using the foregoing principal amounts and interest rates as of the date of this Order, the Defendants owe interest as follows: Maben owes the sum of $29,509.14; Half-Way owes the sum of $6,202.81; Old Mill owes the sum of $4,999.18; and East Gulf owes the sum of $24,889.88.

In each of the foregoing cases the Plaintiffs are entitled to recover an amount equal to the interest owed on the unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(C)(i) and reasonable attorneys' fees.

In summary, then, the amounts to be awarded to the Plaintiffs from each of the respective Defendants by adding the principal sum owed on unpaid contributions, the interest owed on those contributions, the liquidated amount equal to interest owed pursuant to 29 U.S.C. § 1132(g)(2)(C)(i), but excluding attorneys' fees is as follows:

1. Maben owes the sum of $133,620.48.

2. Half-Way owes the sum of $27,195.05.

3. Old Mill Mining owes the sum of $22,583.54.

4. East Gulf owes the sum of $113,429.07.

Old Mill Mining and Maben have each filed counterclaims against the Plaintiffs for filing this action without first resorting to Slab Fork Coal Company in order to satisfy their demand for unpaid contributions. As the Court has determined that Old Mill Mining and Maben Energy are liable for these contributions, the counterclaims against the Plaintiffs for filing this action are hereby dismissed.

Also, each of the contract miners, Maben Energy Corporation, Half-Way, Inc., East Gulf Corporation and Old Mill Mining, Inc. each have filed third-party complaints seeking indemnification from Slab Fork Coal Company for sums owed because of Slab Fork Coal Company's failure to pay pursuant to the separate mining contracts entered into between Slab Fork or its predecessor Westmoreland and each of the contract miners named. Each of the contract miners has been subjected to liability by reason of Slab Fork's failure to pay in

---

* The Plaintiffs contend that a credit of $231.85 should not be allowed as it accrued as a result of mistake of law. This theory relies upon the amendment of 29 U.S.C. § 1103 in September of 1980, and before which no payment made by reason of mistake of law could be cured by a refund by a plan. The Court determines that Maben's overpayments on its conceeded obligations for hourly royalties would be of a factual nature and, therefore, refundable back to the original passage date of 29 U.S.C. § 1103 in 1975. *Chase v. Trustees of Western Conference of Teamsters Pension Fund*, 753 F.2d 744 (9th Cir.1985). Also, the Court believes that the intent of 29 U.S.C. § 1103, which forbids certain refunds to employers made by reason of mistake of fact or by law, would not be offended by crediting Maben Energy by the fact of the overpayments predating the date of a statute permitting refunds of overpayment. Accordingly, the principal amount offered by the Plaintiffs' analysis and the interest resulting therefrom have been reduced to reflect an additional credit to Maben of $231.85.

accordance with its agreement with the contract miners to pay the tonnage royalty pursuant to the mining contracts, and as it further appears that the contract miners will be forced to pay the tonnage royalties which rightfully should have been paid by Slab Fork, the Court will grant the contract miners judgment in the sums they have been determined liable by reason of Slab Fork's failure to pay as promised.

The Court will consider a post-judgment application for attorney's fees by counsel for the Plaintiffs pending Plaintiffs' counsel's submission to the Court of the appropriate documentation and itemization of costs and fees incurred in prosecuting these actions. In documenting the costs and fees incurred by the Plaintiffs, counsel shall include the hourly compensation rate specified in counsel's employment contract with the Plaintiffs. Plaintiffs' counsel's itemization of these costs and fees is to be submitted to the Court not later than July 21, 1986, accompanied by an affidavit stating that the costs and fees listed therein are accurate to the best of counsel's knowledge. Any objection to the Plaintiff's itemization of fees should be filed with the Court not later than August 4, 1986, after which time the Court will deem the matter mature for consideration and may rule thereon without further notice.