Joseph P. CONNORS, Sr., Donald E. Pierce, Jr., William Miller, Thomas H. Saggau and Paul R. Dean as Trustees of the United Mine Workers of America 1950 Pension Plan, 1950 Benefit Plan and Trust, 1974 Pension Plan, and 1974 Benefit Plan and Trust, Plaintiffs,

v.

PRINCETON COAL GROUP, INC., f/k/a Noble Coal Company, Inc., R & B Mining, Inc., Bern Fuel, Inc., Brittany Coal Co., Inc., a/k/a and d/b/a Brittany Company, Inc., R & J Energy, Inc., Harmon Branch Energy, Harmon Branch Leasing, Inc., Robert B. Charles, John G. Sylvester, and Donna Charles, Defendants.

Civ. A. No. 1:90–0153.

United States District Court, S.D. West Virginia, at Bluefield.

June 5, 1991.

---

Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, W.Va., and David Allen, Gen. Counsel, Margaret M. Topps, Assoc. Gen. Counsel, Kenneth M. Johnson, Asst. Gen. Counsel, Stacy A. Hickox, Assoc. Counsel, UMWA Health & Retirement Funds, Office of the General Counsel, Washington, D.C., for plaintiffs.

Michael F. Gibson, Scott A. Ash, Gibson, McFadden & Ash, Princeton, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HALLANAN, District Judge.

This matter is before the Court via Plaintiffs' Motion for Summary Judgment and Plaintiffs' Motion in Limine. Having carefully considered the papers presented, the Court is prepared to issue its ruling herein.

On February 12, 1990, the Trustees of the United Mine Workers of America 1950 Pension Plan, 1950 Benefit Plan and Trust, 1974 Pension Plan, and 1974 Benefit Plan and Trust (hereinafter "Funds") filed a complaint alleging that the Defendants have failed to make certain payments into the Funds pursuant to the terms of Article XX(d) of the National Bituminous Coal Wage Agreements of 1984 and 1988 ("Wage Agreements"). By Order entered April 9, 1991, the Court granted Plaintiffs' Motion to Amend Complaint. The Plaintiffs then filed the First Amended Complaint on April 10, 1991. The First Amended Complaint adds Harmon Branch Leasing, Inc., as a defendant in this action.

In their Motion for Summary Judgment, the Funds set forth a lengthy exposition of the underlying facts in this litigation. Review of the Defendants' Response to the Funds' Motion for Summary Judgment shows that the Defendants do not expressly contest the facts as set forth by the Funds but attempt to create genuine issues of material fact in addressing legal issues. Thus, there appears to the Court no genuine issues of material fact. Plaintiffs' Motion for Summary Judgment is now ripe for decision.

### I. Findings of Fact

Five coal mining corporations opened and closed for business in McDowell County, West Virginia during 1987–1990. The min-

ing corporations were Defendants Noble Coal Company, ("Noble Coal"), R & B Mining, Inc. ("R & B Mining"), Bern Fuel, Inc. ("Bern Fuel"), Brittany Coal Company ("Brittany Coal"), and R & J Energy, Inc. ("R & J Energy"). All five mining corporations were under common control and management by Defendants Robert B. Charles ("Charles"), John L. Sylvester ("Sylvester") and Donna Charles.

Noble Coal was the first of the five mining companies to commence operations. Charles purchased Noble Coal from Larry Cook for consideration of $1.00 in February 1987 and became the sole owner and sole shareholder of the corporation. Charles operated the Banacek # 2 mine in McDowell County, West Virginia as Noble Coal. Noble Coal served as a mining contractor for Soho Coal Corporation ("Soho") and used Soho's equipment. At no time were corporate meetings held. Corporate records were not kept except for a checkbook. The sole asset of the corporation was a $113,000 wage bond posted by the previous owner. During the period March 7, 1987 through April 3, 1987, Charles refused to pay union classified employees, thus forcing employees to make a claim on the wage bond. Noble Coal produced coal for Soho at the rate of $17.00 per ton. Ultimately, Charles earned approximately $50,000 in coal production for Soho while paying no wages or fringe benefits to employees. Claims against the wage bond by employees in April 1987 forced Charles to cease operations of Noble Coal. However, Charles later reactivated the corporation in July 1989. At all times, Charles retained absolute authority to hire, fire and lay off Noble Coal employees. Charles employed Carl Dalton as the mine foreman for Noble Coal.

On March 31, 1987, prior to ceasing operations as Noble Coal, Charles and his wife, Defendant Donna Charles, created R & B Mining, Inc. In the first few days of April 1987, Sylvester entered into a 1984 Wage Agreement with the United Mine Workers of America ("UMWA") on behalf of R & B Mining as its "superintendent." During that month R & B Mining continued the operation of the Banacek # 2 mine. Carl Dalton continued on as mining foreman. The union classified employees of R & B Mining were former employees of Noble Coal. The equipment used for mining by R & B Mining was the same equipment used by Noble Coal. Coal production went to Soho as before.

It is clear that Charles, as "superintendent," supervised and managed the operation of the mine though Donna Charles was the sole owner and officer of record. In reality, Donna Charles had no knowledge of any details of the mining operation as she had no duties. As in the operations of Noble Coal, Charles had absolute authority to hire, fire and lay off employees. In addition, Charles handled any and all employee grievances. Charles admits that R & B Mining never contributed to the Funds as required under the 1984 Wage Agreement. R & B Mining operated until December 1988.

As in the case of Noble Coal, R & B Mining did not follow corporate formalities as R & B Mining failed to maintain a general ledger or hold corporate meetings with recorded minutes. There was only a checking account for purposes of payroll and mine supplies. R & B Mining never issued stock. Eventually, the corporation was dissolved by the West Virginia Secretary of State for failure to file annual reports and pay taxes.

Following the close of R & B Mining operations, Charles remained at the Banacek # 2 mine as Bern Fuel, Inc. beginning on about January 4, 1988. Defendants John L. Sylvester and Charles were partners in this venture. Sylvester is the sole owner of record of Bern Fuel. Charles incorporated Bern Fuel and served as the corporation's registered agent. Moreover, Charles (1) signed the 1988 Wage Agreement with the UMWA on behalf of Bern Fuel as "Vice President," (2) possessed and exercised the authority to lay off employees and handled employee grievances, (3) put up $10,000 for Bern Fuel's wage bond and (4) represented Bern Fuel in the Funds' Business Status Audit of the corporation. A mine inspection report and a UMWA Remittance Advice form submitted to the

Funds list Sylvester as a co-owner of Bern Fuel. Sylvester also possessed authority to hire and fire employees.

Bern Fuel followed Noble Coal and R & B Mining in operating as a contract miner for Soho. Bern Fuel initially used the same equipment used by Noble and R & B Mining. Carl Dalton continued as mine foreman. Substantially all of Bern Fuel's union classified employees were former employees of Noble Coal and R & B Mining. Bern Fuel did not hold corporate meetings and did not maintain corporate minute books. No stock certificates were issued. The corporation failed to submit annual reports and taxes as required under West Virginia law.

Bern Fuel ceased operation in June 1988 as the Banacek # 2 mine was "mined out." Nevertheless, Charles and Sylvester continued to provide health benefits to some of the employees laid off by Bern Fuel through an insurance policy of Defendant Brittany Coal Company. Bern Fuel's lone viable asset, its wage bond, was transferred to Defendant R & J Energy, Inc. Said bond was eventually used by Sylvester and Charles to cover wages of employees at the Trace Fork # 8 mine in McDowell County, West Virginia. On May 15, 1990, the State of West Virginia dissolved Bern Fuel for nonpayment of taxes and failure to file annual reports.

As Bern Fuel came closer to emptying the Banacek # 2 mine of its coal, Charles started a new mine site at the McDowell County Trace Fork # 8 mine. In this connection, Charles incorporated Brittany Coal on or about March 21, 1988. Charles served as the registered corporate agent. Brittany Coal's mailing address was identical to the address used by Bern Fuel in its articles of incorporation. Brittany Coal's telephone number is the same as that listed for Bern Fuel and Defendant R & J Energy. Brittany Coal operated as a contract miner for Soho just two miles from the Branch # 2 mine operations of Noble Coal, R & B Mining and Bern Fuel.

Both Charles and Sylvester managed and supervised the corporation from its creation in March 1988 until its closing in late 1988. Sylvester received and signed registered mail receipts on behalf of Brittany Coal and also had authority to write checks for the mining company. Charles and Sylvester put up little or no capital to start up Brittany Coal. Brittany Coal employed Carl Dalton as its mine foreman. No formal accounting records were kept nor were corporate meetings held and minutes books maintained.

Charles established Defendant Harmon Branch Leasing, Inc. through which he purchased mining equipment and 21 SCA shuttle cars for use by Brittany Coal at the Trace Fork # 8 mine. Brittany Coal's lease payments to Harmon Branch Leasing amounted to a direct payment to the First Community Bank of Princeton, West Virginia on the loan taken out by Harmon Branch Leasing for equipment purchases. Charles also brought over mining equipment from the Banacek # 2 mine for use at the Trace Fork # 8 mine.

Brittany Coal failed to submit annual reports and taxes as required under West Virginia laws. These failures ultimately lead to the revocation of its corporate charter and dissolution.

Following the shut down of Brittany Coal in late 1988, Charles and Sylvester continued operation of the Trace Fork # 8 mine in the name of R & J Energy, Inc. Charles and Sylvester had earlier transferred the Bern Fuel wage bond to R & J Energy. The two men incorporated R & J Energy. Charles drafted the articles of incorporation. Charles negotiated a contract mining agreement between R & J Energy and Royalty Smokeless which took over operations of Soho properties. Charles represented R & J Energy in all employee grievances and negotiated the 1988 Wage Agreement with the UMWA as well as all R & J Energy insurance policies. The health insurance policy covering R & J Energy employees was transferred to R & J Energy from Brittany Coal.

Charles made the daily decisions as to the mining operations and had actual authority to hire and fire employees. Sylvester and Charles each received $30,000 for their role in the operation of R & J Energy.

Eight of the nine union classified employees of R & J Energy were former employees of Brittany Coal. Carl Dalton served as mine foreman for the corporation. Two salaried employees, Robert "Pete" Williams and Roger Sexton, were former employees of Bern Fuel. R & J Energy used the same Harmon Branch Leasing owned equipment that Brittany Coal used. Lease payments on the equipment were irregular and minimal in amount. Some payments were made directly by R & J Energy to First Community Bank. Employees also used mining equipment from the Banacek # 2 mine.

Records of R & J Energy disclose a number of payments made to corporate insiders and related companies. The mother of Robert Charles, Elizabeth Charles, received $30,000 in 1989 for keeping the books of R & J Energy and reimbursements for books and office supplies. Sylvester made payments with R & J Energy funds for accounts payable incurred by Brittany Coal. R & J Energy also paid hospital bills for former Bern Fuel employees. In addition, Sylvester used corporation funds for personal expenses including his personal vehicle.

It appears that R & J Energy is the only named corporate defendant to produce some documents other than the articles of incorporation. Nevertheless, no real or formal set of accounting or records were kept. No stock certificates were issued. There is an absence of minute books which would reflect regular corporate meetings. R & J Energy has failed to submit annual reports on taxes to the State of West Virginia. The corporation ceased operations in December 1990.

On or about July 26, 1989, Charles reactivated Noble Coal which changed its name to Princeton Coal Group, Inc. ("Princeton Coal"). In January 1990, Princeton Coal entered into a 1988 Wage Agreement with the UMWA for operations at the Camelot mine located in Welch, McDowell County, West Virginia as a contract miner for A.T. Massey. Charles negotiated directly with A.T. Massey for the operation of the Camelot mine.

During operations at the Camelot mine, Charles had full authority to hire and fire employees and to sign checks for Princeton Coal. Charles hired Carl Dalton as mine supervisor. Princeton Coal hired two former employees of Bern Fuel to work at the Camelot mine. The corporation used mining equipment from the Banacek # 2 mine and two shuttle cars owned by Harmon Branch Leasing. Princeton Coal never paid a lease fee to Harmon Branch Leasing. Princeton Coal never kept formal accounting records. Charles sold Princeton Coal to Charles Hylton in February 1990. Harmon Branch Leasing dissolved on May 15, 1990 for nonpayment of taxes.

Finally, Charles set up Defendant Harmon Branch Energy to mine coal in Gary, West Virginia. In January 1988, Charles signed a 1988 Wage Agreement with the UMWA on behalf of Harmon Branch Energy for mining operations in Gary, West Virginia. However, Harmon Branch Energy never actually mined coal as another coal mining entity acquired and took hold of the Gary mine. In any event, Sylvester believed that Harmon Branch Energy and Harmon Branch Leasing, Inc., were the same company. Harmon Branch Energy paid for hospitalization expenses incurred by Bern Fuel employees in 1988. During the operation of Brittany Coal, Harmon Branch Energy paid the salary of Charles and Brittany Coal reimbursed Harmon Branch Energy for those payments.

## II. Admissions of the Defendants and Alter Ego

■ Plaintiffs seek to recover unpaid contributions to the Funds under a host of legal theories. In both the original and First Amended Complaint, the Plaintiffs allege that the corporate defendants are labor law alter egos and a single employer and are therefore jointly and severally liable for all debts to the Funds. Moreover, the Plaintiffs contend that individual defendants Robert Charles and John Sylvester are liable for the delinquent and underpaid contributions of the corporate defendants to the Funds as alter egos under federal common law and federal and state standards for corporate veil piercing.

During discovery, the Plaintiffs twice moved for sanctions against the Defendants for failure to cooperate in discovery and to comply with Court orders. Plaintiffs' second motion for sanctions, filed February 4, 1991, came before the Honorable Charles T. Cunningham, United States Magistrate, at a hearing on March 28, 1991. Citing the failure of the Defendants to produce requested documents, the Plaintiffs moved to have certain allegations made in the original complaint admitted against the Defendants and to strike certain affirmative defenses pleaded by the Defendants in their answers. Following the March 28 hearing, Magistrate Cunningham directed the Defendants to submit specific responses to the admissions requested by the Plaintiffs within ten days. By Order entered April 17, 1991, Magistrate Cunningham granted Plaintiffs' request for sanctions and admissions. In so doing, the Magistrate correctly found that the acquisition of Noble Coal by Charles in February 1987 in which Charles purchased the stock of the mining company did not eliminate Princeton Coal's liability to the Funds. On the basis of this finding, Magistrate Cunningham held that Plaintiffs' allegations of Princeton Coal's debt to the Funds were admitted by the individual defendants. Additionally, he held that Princeton Coal's debt for the period August 1, 1986 through April 3, 1987 was admitted as to Charles and Defendant Donna Charles.

Regarding Plaintiffs' alter ego claims, the Magistrate ordered several other admissions. Specifically, he ordered admitted Plaintiffs' contentions that the corporate defendants have at all times acted as alter egos and as a single employer as evidenced by common ownership, officers and management; interchange of union classified employees; common purposes of operation; common utilization of coal mining equipment and payment of debts for other companies. Also ordered admitted were Plaintiffs' allegations that (1) Charles is an officer and owner of the corporate defendants who acted in the interest of the mining companies in relation to the Funds, (2) Sylvester is an officer and owner of Bern Fuel, Brittany Coal and R & J Energy who acted in the interest of said mining companies in relation to the Funds and (3) that Charles, Sylvester and Donna Charles knew that the corporate defendants, during operations, were undercapitalized and possessed insufficient monies to satisfy its debts to the Funds. Furthermore, the Magistrate ordered admitted Plaintiffs' allegation that Charles, Sylvester and Donna Charles are "alter egos" of the corporate defendants as their mining companies failed to observe corporate formalities required by West Virginia law and the Employee Retirement Income Security Act of 1974 ("ERISA").

Though all of the sanctioned admissions are significant in this litigation, we find that the sanctioned admissions concerning alter ego relationships of the Defendants to be of great import. The failure of the Defendants to address Plaintiffs' alter ego claims in their Response to Plaintiffs' Motion for Summary Judgment filed on April 5, 1991 coupled with the admission of alter ego as ordered by the Magistrate leads the Court to conclude that there is no issue of fact or law that the individual and corporate defendants are alter egos.

### III. Liability of the Corporate Defendants to the Funds

Under Article XX(d) of the Wage Agreements, each corporate defendant is required to make specific contributions to the Funds and, in some instances, make payment to the Funds for Benefit Plan withdrawal liability. Audits of the Defendants by the Plaintiffs reveal the following debts and accrued interest owing to the Funds through February 20, 1991: [1]

| | |
|---|---|
| Princeton Coal | $987,197.39 |
| R & B Mining | 113,995.75 |
| Bern Fuel | 36,185.81 |
| Brittany Coal | 61,218.83 |
| R & J Energy | 27,170.43 |
| TOTAL: | $1,225,768.21 |

**1.** The calculations of these figures may be found within the sworn declaration of Judy L. Lance, UMWA Field Audit Manager, dated February 21, 1991. Said declaration is part of Exhibit Book 4, Plaintiffs' Motion for Summary Judgment.

To date, the Defendants have not offered any evidence or sworn affidavits and declarations to refute the Funds' calculations of debt owed. Therefore, there is no dispute as to the extent of monetary liability of the corporate defendants to the Funds.

■ In response to the Plaintiffs' Motion for Summary Judgment and memorandum in support, the Defendants collectively argue that they were excused from their contractual obligation to pay into the 1950 Pension Fund. Specifically, the Defendants argue that they are excused from contributing to the 1950 Pension Fund as Soho Coal Corp., for which the corporate defendants except R & J Energy served as mining contractors, entered into agreements with the UMWA which waived Soho's obligations to contribute to the 1950 Pension Plan. As a matter of law, the Defendants' argument fails. Princeton, R & B Mining, Bern Fuel and Brittany Coal are all signatory parties to a National Bituminous Coal Wage Agreement obligating the coal mining companies to contribute to the 1950 Pension Plan,[2] except where a subsequent waiver of obligation is agreed to by the coal mining company and the UMWA. Any agreement between Soho and the UMWA to waive Soho contributions to the 1950 Pension Fund is inapposite to the liability of the mining companies to contribute as the Defendants are not a party to any Soho waiver and remain bound to their Wage Agreement obligation to contribute to the 1950 Pension Fund. *Combs, et al. v. Maben Energy, et al.*, 637 F.Supp. 954 (S.D.W.Va.1986); *Connors, et al. v. C & A Coal Company*, Civil Action No. 1:87–0434 (S.D.W.Va.) (Order entered November 10, 1988 granting summary judgment). Thus, the corporate defendants are obligated to contribute to the 1950 Pension Fund and are therefore liable for their respective failure to pay or underpayment to the 1950 Pension Fund.

The Defendants have not disputed the debts owed to the Funds as set forth above with evidence to the contrary. In addition, the April 17 Order of the Magistrate holds that the corporate defendants admit to their respective liability to the 1974 Pension Plan, the 1950 Pension Plan and the 1974 Benefit Plan. Accordingly, judgment is appropriate in favor of the Plaintiffs and against R & B Mining, Bern Fuel, Brittany Coal and R & J Energy in the respective amounts set forth above.

The Court declines to award judgment in favor of the Plaintiffs and against Princeton Coal. The Court has learned that Princeton Coal filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of West Virginia on April 8, 1991. Accordingly, this matter is STAYED as to Princeton Coal only pursuant to 11 U.S.C. § 362. Said stay does not affect the adjudication of Plaintiffs' claims against the other defendants.

### IV. Liability of the Individual Defendants to the Funds

■ Having determined that the corporate and individual defendants are alter egos, the Court now turns to consider whether it is appropriate to pierce the corporate veils of the mining companies and hold Robert Charles, John Sylvester and Donna Charles liable for the debts owed to the Funds.

■ The Court recognizes that judicial decisions to pierce a corporate veil and expose those behind the corporation to liability are made with caution. However, courts will not hesitate to pierce when justice so requires. *In re County Green Ltd. Partnership*, 604 F.2d 289, 292 (4th Cir. 1979). Determining when "justice so requires" necessitates careful review and consideration of the facts and circumstances in each case. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 684 (4th Cir.1976). Additionally, the Court is guided by a series of factors set forth in *DeWitt* and *Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60 (4th Cir.1989) to be used in determining the propriety of piercing. The factors are:

---

**2.** Noble Coal, the predecessor of Princeton Coal, signed a 1984 Wage Agreement prior to the February 1987 purchase of the mining company by Charles. R & J Mining also signed a 1984 Wage Agreement. Bern Fuel and Brittany Coal signed 1988 Wage Agreements.

1. gross undercapitalization of the subservient corporation
2. failure to observe corporate formalities
3. nonpayment of dividends
4. siphoning of corporate funds by the controlling entity
5. non-functioning of officers and directors
6. absence of corporate records
7. the corporation is merely a facade for the operation of the dominant stockholder or stockholders

*Keffer*, 872 F.2d at 65.

In considering the facts of this action and applying the above factors, piercing is appropriate as a matter of law and overall fairness. Clearly, the corporate defendants were grossly undercapitalized. The major asset, which often times proved to be the sole asset at the moment of incorporation, was the employee wage bond. Ultimately, Charles and Sylvester would transfer the wage bond to the next corporate successor. Initial operations of the mining companies took place without up front cash. There was a complete and seemingly deliberate failure to observe corporate formalities. Corporate meetings were not held. No formal accounting records were regularly kept aside from payroll records. There were no issues of stock certificates or dividends by the mining companies. Revenues generated by the operations of the corporate defendants were systematically transferred by Charles and Sylvester to another mining company for reimbursement or payment of employee hospital bills, accounts payable and mining equipment leases. At times operating revenues, aside from salary, came to rest in the hands of the individual defendants and members of their family. Corporate records were not kept by any of the mining companies. Annual reports were never compiled nor were state taxes paid.

Distilled to its essence, the operations of the corporate defendants amounted to a money making enterprise of the individual defendants. The Court firmly believes that it would be grossly unfair to the Funds and its trustees and contrary to ERISA principles to permit the individual defendants to take cover behind the corporate form of their mining enterprises and escape personal accountability for nonpayment and underpayment to the Funds in violation of the 1984 and 1988 Wage Agreements. Justice requires that the individual defendants be held accountable for the debts owed to the Funds. Accordingly, judgment will be granted in favor of the Plaintiffs and against the individual defendants, jointly and severally, in the full amount of the debts owed to the Funds.

The Court hereby ORDERS GRANTED Plaintiffs' Motion for Summary Judgment. The Court amends its prior ruling on Plaintiffs' Motion in Limine and now ORDERS the same DENIED AS MOOT. Judgment is hereby ORDERED ENTERED in favor of the Plaintiffs and against:

1. Defendant R & B Mining, Inc. in the amount of $113,995.75,
2. Defendant Bern Fuel, Inc. in the amount of $36,185.81,
3. Defendant Brittany Coal, Inc., a/k/a and d/b/a Brittany Company, Inc. in the amount of $61,281.83,
4. Defendant R & J Energy, Inc. in the amount of $27,170.43, and
5. Defendants Robert B. Charles, John L. Sylvester and Donna Charles, jointly and severally, in the amount of $1,225,768.21.

In rendering judgments against corporate defendants as well as the individual defendants, the Court emphasizes that the Plaintiffs may only recover up to $1,225,768.21, the amount of debts owed to the Funds in this action.

This matter is concluded as to Defendants R & B Mining, Inc., Bern Fuel, Inc., Brittany Coal, Inc., a/k/a and d/b/a Brittany Company, Inc., R & J Energy, Inc., Robert B. Charles, John L. Sylvester and Donna Charles. As Defendant Princeton Coal Group, Inc. is now in bankruptcy, all proceedings against said defendant are ORDERED STAYED. The Court now directs the Clerk to place this matter on the inactive docket. At the completion of bankruptcy proceedings, counsel may then move

to reinstate this matter to the active docket of the Court.

IT IS SO ORDERED.